UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MARC-ELIE CLERGEAU,                              :
                                                 :
                    Plaintiff,                   :
                                                 :          **MEMORANDUM AND ORDER**
                                                 :          06-CV-05567 (DLI) (CLP)
     -against-                                   :
                                                 :
LOCAL 1181, AMALGAMATED                          :
TRANSIT UNION, AFL-CIO,                          :
                                                 :
                    Defendant.                   :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Marc-Elie Clergeau brings this action against defendant, Amalgamated Transit Union, AFL-CIO, Local 1181 (the "Union") under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that the Union breached its duty of fair representation when it declined to pursue a grievance against plaintiff's employer, Lonero Transit, Inc. ("Lonero"), contesting plaintiff's rate of pay and seniority. The Union, arguing it had no duty to grieve plaintiff's complaint because plaintiff's rate of pay and seniority were correctly based on the terms of the collective bargaining agreement between it and Lonero ("the CBA"), moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Union's motion is granted.

**I.   Background**

Plaintiff alleges the following facts in his complaint. During all periods relevant to this dispute, plaintiff has been a member in good standing of the Union. In 1993, plaintiff began working as a bus driver for a company under contract with the Board of Education of the City of New York (the "BOE"). After working intermittently as a "casual driver" for several months, plaintiff secured a full-time or "regular" position at Pupil Transportation, Inc. in February 1994.

Over the next five years, plaintiff worked as a regular employee with two other bus companies, R. D'Auria Transportation, Inc. and United Transit, Inc. ("United"), until United terminated him in 1999. Alleging United discharged him without just cause in violation of the applicable collective bargaining agreement, and the Union breached its duty of fair representation by failing to contest his termination, plaintiff filed a lawsuit in this district against United and the Union.

A trial held in 2002 before the Honorable Nicholas G. Garaufis, U.S. District Judge for the Eastern District of New York, resulted in a jury verdict for plaintiff. The jury found that United violated the collective bargaining agreement between it and the Union by terminating plaintiff without just cause and with discriminatory intent. Additionally, the jury found that the Union breached the duty of fair representation it owed plaintiff by refusing to represent him in contesting his termination. The jury awarded plaintiff both compensatory and punitive damages. After the trial, plaintiff moved, *inter alia*, for reinstatement with United and front pay. In an order dated March 3, 2004, Judge Garaufis denied these aspects of plaintiff's motion, reasoning that plaintiff could have obtained comparable union employment as a school bus driver by contacting the BOE's Office of Pupil Transportation ("OPT") to place his name on an industry-wide seniority list:

> It is clear to the court that the plaintiff almost certainly would have found employment as a union driver either with [United] or with other contractors offering comparable work had he just contacted OPT. . . . As reinstatement is not necessary at this time because the plaintiff may find comparable union employment without the court's intervention, [Plaintiff]'s applications for further back pay and for front pay also are denied.

*Clergeau v. Local 1181, Amalgamated Transit Union*, 99-CV-8260, Memorandum and Order at 6-7 (E.D.N.Y. Mar. 3, 2004) (hereinafter the "2004 Order"), *vacated in part on other grounds*, 162 F. App'x 32 (2d Cir. 2005). In reaching this conclusion, Judge Garaufis noted that, although

2

plaintiff had failed to avail himself of the Master Seniority List, he had been aware of its existence since at least 2002. *Id*. at 6 n.1.

Subsequent to the 2004 Order, plaintiff again declined to place his name on the OPT industry-wide list, and instead sought work independently, eventually accepting a non-unionized driving position in February 2005. In August of that year, once again forsaking the OPT system and relying on an independent search, plaintiff obtained a unionized position with Lonero, another school bus company under contract with the BOE. Lonero hired plaintiff as a new employee and paid him at the rate of a first-year driver. On April 11, 2006, plaintiff requested that the Union file a grievance with Lonero on his behalf to adjust his seniority status to that of a driver with twelve years of experience and to increase his salary accordingly. Plaintiff's attorney received a letter from the Union dated April 27, 2006 informing plaintiff that the Union would not file the grievance. Plaintiff then commenced this action, arguing that the Union's refusal constituted a breach of its duty of fair representation.

**I. Discussion**

    A. <u>Standards on a Rule 12(c) Motion</u>

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review applied to motions to dismiss under Rule 12(c) is the same applied to motions to dismiss under Rule 12(b)(6). *Katz v. Image Innovation Holdings, Inc.*, 542 F. Supp. 2d 269, 271 (S.D.N.Y. 2008) (citing *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006)). In resolving either type of motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See*

*Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court retired the standard set forth half a century ago in *Conley v. Gibson*, that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of the requirement that plaintiff plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. 1955, 1968-69, 1974 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). Pursuant to *Bell Atlantic*, in order to be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 127 S. Ct. at 1964-65 (citations omitted). The Second Circuit has interpreted the foregoing language to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

    B.    <u>The Duty of Fair Representation</u>

The duty of fair representation plays a central role in the nation's labor policy and has long "stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). This duty "requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)

(quoting *Vaca*, 386 U.S. at 177). "In other words, a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Id*. (citing *Vaca*, 386 U.S. at 190).

An arbitrary breach of a union's duty of fair representation occurs "only if [the union's conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational.'" *Air Line Pilots v. O'Neill*, 499 U.S. 65, 78 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Bad faith occurs when a union "intended to mislead workers, and . . . the union had no other purpose but to mislead." *Marquez*, 525 U.S. at 46-47; *see also White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) ("Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct") (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). Finally, discrimination occurs when a union, without a legitimate purpose, favors some of its members at the expense of others. *See Ramey v. Dist. 141, Int'l Ass'n of Machinists and Aerospace Workers*, 378 F.3d 269, 277 (2d Cir. 2004) (citations omitted).

An employee may seek judicial relief to redress a claim that a labor union breached its duty of fair representation by failing to file a grievance "if . . . the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Vaca*, 386 U.S. at 185. In determining whether a breach has occurred, courts typically look to determine whether the union's refusal to process the grievance was arbitrary. *Clarke v. Commc'ns Workers of America*, 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases). A union acts arbitrarily in this situation when it "ignores or perfunctorily

presses a meritorious claim," *Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993), but not where it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance," *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994). Before deciding that a grievance lacks merit, however, the union must "conduct at least a 'minimal investigation' . . . [b]ut under this standard, only an 'egregious disregard for union members' rights constitutes a breach of the union's duty' to investigate." *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 420 (1st Cir. 2005) (quoting *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1176 (7th Cir.1995); *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985)). Accordingly, to prevail on a fair representation claim in such circumstances, a plaintiff must demonstrate that (1) his grievance had merit, (2) that the Union was aware of the grievance, and (3) that the Union's conduct in failing to process the grievance was arbitrary. *See Clarke*, 318 F. Supp. 2d at 58-59 (citing *Young v. United States Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990)).

    C.    <u>Plaintiff's Claims against the Union</u>

Plaintiff claims that the Union breached its duty of fair representation by failing to grieve his complaint against Lonero. In an attempt to demonstrate that his complaint against Lonero had merit, i.e., that he was entitled to seniority and a rate of pay above that of a new employee, plaintiff cites Section VI of the CBA, entitled "Layoffs, Recalls and Transfers," which states, *inter alia*, that "[f]urloughed employees shall have their seniority rights preserved for the duration of this Agreement." (Brook Decl., Ex. A at 10.) The Union correctly points out, however, that when plaintiff began his independent search for work, going outside the industry-

wide seniority system, he ceased to be a laid-off or furloughed employee, and became a "new employee" under the CBA. Section V of the CBA, entitled "Seniority and Tenure" reads, in pertinent part:

> For all purposes of this Agreement, in calculating tenure and/or length of service, an employee's period of continuous employment with the Employer shall be combined with his/her employment in any other company in the school bus industry under contract with the N.Y.C. Department of Education and the employee was doing N.Y.C. Department of Education work and as a result of loss of bid or by any other means was transferred and followed the work as if all such employment had been with the Employer. *References to new employees in the Agreement shall mean employees hired on or after the first day of each school year or those who move from employer to employer on their own and have not followed the work, which constitutes a break in service*.

(Brook Decl., Ex. A at 8 (emphasis added).) A distinction is thus drawn between employees who have "followed the work" from one BOE employer to another and those employees who "move from employer to employer on their own and have not followed the work." *Id*. Even though United and Lonero are both companies in the school bus system under contract with the BOE, plaintiff did not "follow the work" from one to the other, rather he moved from United to a non-union position and then to Lonero on his own. Unfortunately for plaintiff, under the unambiguous terms of the CBA, his independent job search constituted a break in service and rendered him a new employee when he began working at Lonero.[1]

Plaintiff nevertheless argues that the "new employee" definition under Section V of the CBA cannot apply to him, because his break in service was not self-initiated, but instead was caused by United's illegal termination. But being laid off, in itself, would not have caused a break in service or a loss in seniority had plaintiff "followed the work" and added his name to the Master Seniority List either before or after Judge Garaufis's 2004 Order, which specifically

---

[1] Other sections of the CBA similarly require employees to "follow the work" for purposes of computing length of employment. (*See* Brooks Decl., Ex. A., at 30 (§ XVI, "Rates of Pay," last paragraph); 36 (§ XVIII, "Wage Accruals," last paragraph); & 51-52 (§ XXXVII, "Tenure," first paragraph).)

identified this approach as the appropriate means for plaintiff to obtain comparable union employment and preserve his rate of pay. Whatever his reasons, plaintiff embarked on an independent search for employment, including non-union work. Under the CBA, this constituted a break in service and rendered plaintiff a "new employee" when he started working for Lonero. Thus, pursuant to the CBA, Lonero was entitled to treat plaintiff as a "new employee." As such, plaintiff was not entitled to seniority, and his complaint against Lonero lacked merit. The duty of fair representation that the Union owes to plaintiff does not require it to grieve meritless complaints. *Clarke*, 318 F. Supp. 2d at 56 (quoting *Cruz*, 34 F.3d at 1153-54). The Union thus acted within its discretion when, after considering plaintiff's complaint against Lonero, it declined to invoke grievance procedures on plaintiff's behalf. Accordingly, plaintiff has failed to state a plausible claim that the Union breached its duty of fair representation.[2]

### III. Conclusion

Plaintiff has failed to state a claim for which relief can be granted. Accordingly, the Union's motion for judgment on the pleadings pursuant to Rule 12(c) is granted.

SO ORDERED.

DATED: Brooklyn, New York
August 10, 2008

/s/
DORA L. IRIZARRY
United States District Judge

---

[2] Plaintiff also asserts that United violated the CBA by never contacting him as positions became available after his termination in June 1999. Regardless of the merits of this allegation, plaintiff neglects to explain why the Union would be obligated to file a grievance against Lonero, the company that hired plaintiff in 2005 as a result of plaintiff's independent job search, based on the actions of United, the company that laid plaintiff off in 1999.